STATE OF NORTH CAROLINA v. CLESTAN HIGGINBOTTOM

No. 634A83

(Filed 30 January 1985)

### 1. Constitutional Law § 80; Rape and Allied Offenses § 7— first degree sexual offense—mandatory life sentence—no cruel and unusual punishment

The imposition of a mandatory sentence of life imprisonment for a first degree sexual offense committed upon a four-year-old child is not so disproportionate as to constitute a violation of the eighth amendment of the Constitution of the United States although the offense was committed without physical injury or violence, the use of weapons or overt humiliation.

### 2. Criminal Law § 114.3— instruction on witness credibility—no expression of opinion

The trial court's instruction on witness credibility, including a statement that "it is not necessarily the number of witnesses or the quantity of evidence, but rather, it is the quality or convincing force of the evidence that may be of the most concern to you," did not constitute an expression of opinion as to the credibility of defendant's witnesses because it came at the outset of the charge and following the testimony of the last of defendant's witnesses.

### 3. Criminal Law § 99.7— admonishment of witnesses—no expression of opinion

The trial court's admonishment of certain disorderly defense witnesses out of the presence of the jury did not constitute an expression of opinion of hostility toward the witnesses.

### 4. Witnesses § 1.2— four-year-old child—competency as witness

The trial court did not abuse its discretion in permitting the four-year-old victim to testify in a trial for a first degree sexual offense after conducting an extensive voir dire which included examination by the prosecutor, defense counsel and the court. The child was not rendered incompetent as a witness because she asked her mother several questions while testifying, because she complained several times that her lip hurt, looked away and put her hand in her mouth, or because at some point the district attorney gave her a soda in his office and reviewed her testimony with her.

### 5. Criminal Law § 181.3— post-trial motion for appropriate relief—discretion of court

The disposition of post-trial motions for appropriate relief under G.S. 15A-1414 is within the discretion of the trial court, and the refusal to grant such a motion is not error absent a showing of abuse of that discretion.

### 6. Criminal Law § 162— absence of objection—tactical decision—question not presented on appeal

Defendant cannot complain on appeal about various methods used by the district attorney to elicit answers from the four-year-old victim of a sexual offense where defendant failed to object at trial, and defendant's attorney revealed at a hearing on a motion for appropriate relief that his failure to object was a tactical decision.

**7. Criminal Law § 87.2— sexual offense—leading questions to child victim**

The trial court did not abuse its discretion in permitting the prosecutor to use leading questions in examining the four-year-old victim of a sexual offense where the child was required to testify about matters of a most delicate nature, and she had difficulty understanding the questions posed to her because of her age.

**8. Criminal Law § 89.5— variance in corroborating testimony**

In a prosecution for a sexual offense committed upon a four-year-old child, testimony by the child's mother that the child told her the sexual acts were "yucky" was admissible to corroborate testimony by the child even though the child did not testify that the acts were "yucky." In any event, the admission of such testimony, if error, was not reversible error since it provided insignificant embellishment to other testimony which established ample evidence that defendant committed the crime charged.

**9. Criminal Law § 98— child witness emotionally upset—recess—discretion of court**

When the four-year-old victim of a sexual offense became emotionally upset while testifying, the trial court did not abuse its discretion in ordering a recess during which the child was taken to the district attorney's office.

Justice VAUGHN did not participate in the consideration or decision of this case.

APPEAL by defendant from *Brannon, J.,* at the 12 September 1983 Criminal Session of Superior Court, ONSLOW County.

On 26 July 1983 defendant was charged with having committed a first-degree sexual offense upon Cassandra Harsen, a four-year-old child. Defendant entered a plea of not guilty.

The State presented evidence through the testimony of Cassandra Harsen and her mother, Jenny Morrell, which tended to show that Cassandra was four years old at the time of the assault and that she lived with her mother in Jacksonville. In May 1983 Cassandra was left in the care of defendant and his wife, Nina Higginbottom, while Ms. Morrell went on a week's vacation. The two families were well acquainted and had exchanged babysitting services in the past.

Cassandra's testimony tended to show that one night while she was staying with the Higginbottoms, Nina Higginbottom fixed popcorn for the children and put them to bed. Cassandra and the Higginbottoms' three-year-old son, Kenny, shared a bed in Kenny's bedroom. Cassandra went to sleep and was awakened by defendant who entered the bedroom and laid on the bed. Defend-

ant then made the child suck on his penis. Afterwards he asked her if it felt good and if it tasted good.

Ms. Morrell testified that when she returned from the mountains the following week, Cassandra told her that defendant made her put his "wee-wee" in her mouth.

Defendant's evidence tended to show that on the night in question, defendant, his wife, children, and Cassandra visited a next-door neighbor to celebrate the neighbor's birthday. Mrs. Higginbottom left the birthday party to take the children home and to fix popcorn. Defendant left the party between 10:30 and 11:30 p.m. and returned home. After the children were put in bed, both defendant and Mrs. Higginbottom checked on the children. Mrs. Higginbottom testified that her husband had to go into the children's bedroom to quiet them but that she was nearby while he was in the bedroom. Defendant and his wife returned to the living room where they watched television until late that night. Defendant fell asleep in the den on a love seat and slept there all night. Mrs. Higginbottom slept on a couch in the den. Other evidence presented by defendant tended to suggest that Cassandra told the story about defendant because she was angry at him for not permitting her to spend the night with some of defendant's friends. A number of witnesses testified that Cassandra behaved normally after the night in question and that defendant had a good reputation in the community.

The jury returned a verdict of guilty of first-degree sexual offense. The trial court sentenced defendant to life imprisonment from which he appealed pursuant to N.C.G.S. 7A-27(a).

*Rufus L. Edmisten, Attorney General, by Joan H. Byers, Assistant Attorney General, for the State.*

*W. M. Cameron, III for defendant-appellant.*

BRANCH, Chief Justice.

[1] Defendant first argues that his sentence of life imprisonment is unconstitutionally excessive and constitutes cruel and unusual punishment in violation of the eighth amendment to the Constitution of the United States.

The eighth amendment requires that "a criminal sentence . . . be proportionate to the crime for which defendant has been

convicted." *Solem v. Helm*, 463 U.S. 277, 290 (1983); *State v. Ysaguire*, 309 N.C. 780, 309 S.E. 2d 436 (1983). We note, however, that only in "exceedingly unusual non-capital cases will the sentences imposed be so grossly disproportionate as to violate the Eighth Amendment's proscription of cruel and unusual punishment." *State v. Ysaguire*, 309 N.C. at 786, 309 S.E. 2d at 440. This Court has repeatedly stated that it is within the province of the General Assembly and not the judiciary to determine the extent of punishment which may be imposed upon those convicted of crimes. *State v. Shane*, 309 N.C. 438, 306 S.E. 2d 765 (1983), *cert. denied*, --- U.S. ---, 104 S.Ct. 1604 (1984); *State v. Cradle*, 281 N.C. 198, 188 S.E. 2d 296, *cert. denied*, 409 U.S. 1047 (1972). Punishment within the maximum fixed by statute cannot be classified as cruel and unusual punishment unless the punishment provisions of the statute itself are unconstitutional. *State v. Cradle*, 281 N.C. 198, 188 S.E. 2d 296.

First-degree sexual offense, a Class B Felony, carries with it a mandatory sentence of life imprisonment. *See* N.C. Gen. Stat. § 14-1.1 (1981). In *State v. Shane*, 309 N.C. 438, 306 S.E. 2d 765 (1983) this Court rejected the argument that a life sentence for first-degree sexual offense is cruel and unusual punishment. Defendant concedes that a first-degree sexual offense is neither a trivial nor an insignificant crime. Nonetheless he attempts to distinguish his case from *Shane* by noting that in his case there was no physical injury or violence, no use of weapons, bondage, or overt humiliation.

It is true that the offense in this case was committed without verbal or physical abuse or violence. Nonetheless, at the time of the offense, N.C.G.S. § 14-27.4 declared that a person committed a first-degree sexual offense when he or she engaged in a sexual act

(1) [w]ith a victim who is a child of the age of 12 years or less and the defendant is of the age of 12 years or more and is four years older than the victim.

N.C. Gen. Stat. § 14-27.4(a) (amended 1983).

Clearly the legislature determined that whether or not accompanied by violence or force, acts of a sexual nature when performed upon a child are sufficiently serious to warrant the punishment mandated for Class B Felonies. Since it is the func-

tion of the legislature and not the judiciary to determine the extent of punishment to be imposed, we accord substantial deference to the wisdom of that body. *See Solem v. Helm*, 463 U.S. at 290, n. 16. The imposition of a mandatory sentence of life imprisonment for first-degree sexual offense is not so disproportionate as to constitute a violation of the eighth amendment of the Constitution of the United States. This assignment of error is overruled.

[2] By his next assignment of error defendant contends that the trial judge erred by impermissibly expressing his opinion in his instructions to the jury as to the credibility of defendant's witnesses. Although the State offered only two witnesses at trial, the defendant called fourteen witnesses to testify in his behalf. The trial court, in pertinent part, instructed the jury as follows:

> THE COURT: All right, ladies and gentlemen, this is a criminal action entitled the State of North Carolina versus Clestan Higginbottom.
>
> The defendant has been placed on trial on a charge of first degree sexual offense. All of the evidence in the case has now been presented, both that of the State and of the defense. In any case, civil or criminal, it is not necessarily the number of witnesses or the quantity of evidence, but rather, it is the quality or convincing force of the evidence that may be of the most concern to you. Having heard all the evidence, it now becomes your duty to decide from this evidence what the facts are. You must apply the law that I am about to give you to those facts as you, and you alone, find those to be.

The record reflects no request for the instruction by the State. Defendant concedes that the instruction is a correct statement of law. He maintains, however, that the credibility instruction, coming as it did at the outset of the charge and following the testimony of the last of defendant's witnesses, appeared to be a direct comment by the judge on the credibility of those witnesses.

The trial court has wide discretion in presenting the issues of a case to the jury if the law is adequately explained. *State v. Mundy*, 265 N.C. 528, 144 S.E. 2d 572 (1965). A trial judge has a duty to instruct on all substantial and essential features of the case embraced within the issue and arising on the evidence. *State*

*v. Harris*, 306 N.C. 724, 295 S.E. 2d 391 (1982). A trial judge may in his discretion also instruct on the subordinate features of the case without request by counsel. *Id.* The purpose of a charge is to give a clear instruction which applies the law to the evidence in such a manner as to assist the jury in understanding the case and in reaching a correct verdict. *Id.; State v. Williams*, 280 N.C. 132, 184 S.E. 2d 875 (1971).

The trial judge did not abuse his discretion or impermissibly express his opinion in this case. Although not required to give an instruction on witness credibility, this instruction was a correct statement of the law. Defendant may not have benefited by the instruction; nonetheless it did not constitute an improper expression of opinion by the trial judge.

[3] By this assignment of error defendant also argues that during the course of the trial, the trial judge admonished witnesses for defendant to keep order, thus demonstrating his poor opinion of those witnesses. Although it is true that the trial court admonished certain of defendant's witnesses and warned them that their actions could result in their being jailed, he did so out of the presence of the jury. A trial judge has the power and the duty to control the witnesses in a courtroom. *See* N.C. Gen. Stat. § 15A-1033 (1983). We do not view the trial judge's actions out of the jury's presence to control disorderly witnesses as an indication of an ongoing hostility toward the witnesses. We note additionally that the judge carefully instructed the jury that it should draw no inference about his opinion of the case based on his rulings or actions during trial. We find no merit in this assignment of error.

[4] Defendant next contends the trial court erred in allowing Cassandra Harsen to testify. He argues that a four-year-old child inherently lacks the capacity to be a competent witness and that this child demonstrated her lack of competence. We disagree.

The rule in this State is that there is no age below which one is considered incompetent as a matter of law. *State v. Jones*, 310 N.C. 716, 314 S.E. 2d 529 (1984). The test is whether the witness understands the obligation of an oath or affirmation and has sufficient intelligence to give evidence which will assist the jury in determining the truth of the matters which it is called upon to decide. *Id. See State v. Ludlum*, 303 N.C. 666, 281 S.E. 2d 159

(1981) (four-year-old's testimony sufficient to support conviction of first-degree sexual offense). This is a matter which rests in the sound discretion of the trial judge in light of his examination and observation of a particular witness. *State v. Jones*, 310 N.C. 716, 314 S.E. 2d 529 (1984).

The trial court conducted an extensive *voir dire* of the young witness in this case. The *voir dire* included examination by the prosecutor, the defendant's counsel and the court. The child answered questions consistently and intelligently throughout, responding to questions about her name, her age, and her city of residence. She testified that she knew what a lie was and that a heavenly Father punished persons who told lies. She was able to answer questions clearly and to relate details and occurrences to the jury. At the conclusion of the *voir dire*, the trial judge ruled that the child was a competent witness, stating

> In my discretion I find that she is of sufficient age and intelligence and overall comprehension to, and has sufficient mind to understand the nature and obligation of an oath and to correctly perceive and then impart her impressions of the matters which she has seen or heard.

We find that the trial court acted well within its discretion in allowing the child to testify. Defendant refers to a number of points in the child's testimony which he alleges demonstrate Cassandra's heavy reliance on her mother's guidance, her lack of concentration and her susceptibility to influence. Although it is true that the child several times asked her mother questions while testifying, those questions related to matters which were not pertinent to the issues of the case and included such matters as what a "Smurf" was and whether one of Cassandra's siblings was a stepsister or a real sister. From the record it appears that Cassandra several times complained that her lip hurt, looked away and put her hand to her mouth. These mannerisms, characteristic of any four-year-old child, do not exhibit such a lack of concentration on the part of the witness as to render her incompetent. The child's testimony indicates that at some point the district attorney gave the child a soda pop in his office and reviewed with her her testimony. While this conduct may have been an appropriate subject for cross examination or a jury argument, it in no way alters Cassandra's competence as a witness. This assignment of error is without merit.

[5]  Defendant assigns as error the trial court's denial of his motion for appropriate relief. Pursuant to Article 89 of the General Statutes, defendant filed a motion for appropriate relief four days after judgment was entered. Several errors cited by defendant in his motion for relief were not objected to at trial. Generally, a defendant's failure to enter an appropriate objection results in a waiver of his right to assert the alleged error upon appeal. *See State v. McDougall*, 308 N.C. 1, 301 S.E. 2d 308 (1983); N.C. Gen. Stat. § 15A-1446(a) & (b) (1983). We have discussed in this opinion and have found no merit in other contentions raised by defendant in his motion for appropriate relief. In considering the remainder of the contentions in the motion, we note that the disposition of post-trial motions for appropriate relief under N.C.G.S. § 15A-1414 are within the discretion of the trial court. The refusal to grant them is not error absent a showing of an abuse of that discretion. *See State v. Batts*, 303 N.C. 155, 277 S.E. 2d 385 (1981). We find no abuse of discretion in the trial court's denial of defendant's motion for appropriate relief.

[6]  The defendant contends that he was denied a fair trial because of "domination of the child witness by the district attorney." Defendant points to leading questions by the district attorney and various methods the prosecutor used to elicit answers from the child. Although defendant objected to several leading questions, he did not object to other behavior of which he now complains. Indeed, in the hearing on the motion, defendant's attorney revealed that his failure to object was a tactical decision calculated to portray the child witness as susceptible to adult domination. Defendant cannot now complain since his chosen course results in a waiver of his right to assert error on appeal.

[7]  It is true that the prosecutor used leading questions in examining the witness. Leading questions are necessary and permitted on direct examination when a "witness has difficulty in understanding the question because of immaturity, age, infirmity or ignorance or when the inquiry is into a subject of delicate nature such as sexual matters." *State v. Greene*, 285 N.C. 482, 492, 206 S.E. 2d 229, 236 (1974). Furthermore, rulings by the trial court on the use of leading questions are discretionary and reversible only for abuse of discretion. *State v. Smith*, 290 N.C. 148, 226 S.E. 2d 10, *cert. denied*, 429 U.S. 932 (1976).

It is clear that the child was required to testify about matters of a most delicate nature. It is equally clear that because of her age, she had difficulty understanding the questions posed to her by trial counsel. In allowing the district attorney to examine the witness with leading questions, we find that the trial court did not abuse its discretion. *See State v. Stanley*, 310 N.C. 353, 312 S.E. 2d 482 (1984) (trial court did not abuse discretion in permitting leading questions of a six-year-old witness concerning sexual matters).

[8] Defendant next contends that the trial court improperly admitted certain testimony of Ms. Morrell, the mother of Cassandra. Ms. Morrell testified that upon her return from her mountain trip, Cassandra told her about defendant's sexual conduct. Ms. Morrell was permitted for purposes of corroboration to relate what Cassandra had said to her:

A. Okay. She whispered in my ear that she was scared to tell me what she had to tell me but that Higgy [defendant] made her put his wee-wee in his mouth.

Q. (Mr. Stroud) In her mouth?

A. In her mouth, yeah. And I questioned her about it some more because, you know, I just didn't really know. She told me that she thought it was yucky.

MR. CAMERON: Objection, Your Honor.

THE COURT: Well, again, received for the purpose of corroboration of the preceding witness. It will be for the jury to determine whether or not it corroborates.

Defendant contends that Ms. Morrell's testimony went beyond the proper scope of corroboration because the child did not testify about the sexual acts being "yucky." Ms. Morrell also testified that Cassandra told her she cried, that defendant's penis almost choked her and that she felt like throwing up. Since defendant objected only to the testimony about Cassandra's saying "it was yucky," we address ourselves only to that statement.

It is not necessary that evidence prove the precise facts brought out in a witness's testimony before that evidence may be deemed corroborative of such testimony and properly admissible. *State v. Burns*, 307 N.C. 224, 297 S.E. 2d 384 (1982). The term

"corroborate" means "[t]o strengthen; to add weight or credibility to a thing by additional and confirming facts or evidence." *State v. Case*, 253 N.C. 130, 135, 116 S.E. 2d 429, 433 (1960) *cert. denied*, 365 U.S. 830 (1961) (quoting Black's Law Dictionary, 444 (3rd ed.) ). Although Cassandra's prior statement to her mother did not precisely track her trial testimony, it tended to confirm and strengthen her testimony. *See State v. Burns*, 307 N.C. 224, 297 S.E. 2d 384 (1982). As in *Burns* we find that although the child's prior statements to her mother were "perhaps not tending to prove the precise narrow facts brought out in the [child's] testimony during the trial, certainly [they] constituted corroborating evidence supplementary to [her] testimony and tending to strengthen and confirm [her] testimony." *Id*. at 231, 297 S.E. 2d at 388. Whether or not the statement was corroborative was a matter for the jury to decide, as the court correctly instructed. *Id*.

In any event, assuming for the sake of argument that the admission was error, it was not reversible error. The statement provided insignificant embellishment to other testimony which established ample evidence that defendant had committed the crime charged. *See e.g. State v. Taylor*, 304 N.C. 249, 283 S.E. 2d 761 (1981), *cert. denied*, 463 U.S. 1213, 103 S.Ct. 3552 (1983).

[9] Defendant points to numerous "improper indulgences" granted the child throughout the trial in his motion for appropriate relief. At one point after the prosecutor asked the child about what defendant had done to her, the child became emotionally upset. The trial court ordered a recess during which time Cassandra was taken to the district attorney's office. Defendant objected outside the presence of the jury to the timing of the recess and to the fact that the prosecutor had an opportunity to review the child's testimony prior to a crucial point in the State's case. The prosecutor related that he had merely attempted to reassure the child during the recess that defendant could not hurt her. He stated to the trial judge that he did not recall reviewing Cassandra's testimony further. The trial judge informed the attorneys that it was his custom to recess court whenever a witness lost composure. He further stated that reviewing a witness's testimony is a proper function of trial counsel.

A presiding judge is given large discretionary power as to the conduct of a trial. *State v. Rhodes*, 290 N.C. 16, 224 S.E. 2d

631 (1976). Absent controlling statutory provisions or established rules, all matters relating to the orderly conduct of the trial are within his discretion. *Id.* We find no abuse of discretion on the part of the trial judge.

We have reviewed the matters raised in defendant's motion for appropriate relief. We hold that the trial court did not abuse its discretion in denying the motion and this assignment of error is overruled.

We do not deem it necessary to address defendant's final assignment of error because we have already disposed of the contention raised by it.

We find that defendant received a fair trial free of prejudicial error.

No error.

Justice VAUGHN did not participate in the consideration or decision of this case.