STATE OF NORTH CAROLINA v. JOHN BRAVER FRIEND

No. COA11-572

(Filed 6 March 2012)

1. **Constitutional Law—separation of powers—prosecutor's voluntary dismissal and refiling of charge—control of calendar**

   The separation of powers provision of the North Carolina Constitution was not violated by the State dismissing an impaired driving charge when its motion for a continuance was denied. Although defendant contended that the district attorney is an executive branch officer, the prosecutor is by precedent a judicial or quasi-judicial officer. Even if the district attorney is an executive officer, the trial court retained ultimate control over its calendar after the State filed a new charge.

2. **Constitutional Law—due process—voluntary dismissal of charge after continuance denied—refiling—no violation**

   Defendant was not denied due process when the State refiled an impaired driving charge which it had earlier dismissed after its motion for a continuance had been denied. The voluntary dismissal was pursuant to N.C.G.S. § 15A-931, the refiling was within the statute of limitations, defendant did not argue bad faith or

STATE v. FRIEND

[219 N.C. App. 338 (2012)]

show how he was prejudiced, and defendant did not demonstrate how the charge shocked the conscience or interfered with defendant's fundamental rights.

**3. Constitutional Law—right to speedy trial—charge dismissed and refiled—appealed from district to superior court**

Defendant's right to a speedy trial on an impaired driving charge was not violated where the date of the offense and initial charge was 7 March 2009, that charge was voluntarily dismissed by the State and the charge was refiled in district court on 13 April, defendant never filed a speedy trial motion in district court, and his only speedy trial request was in superior court on 4 February 2010. The time from his appeal from district to superior court until his trial in superior court was less than one year. Moreover, the reasons for the delay were attributable to defendant as much as to the State, defendant's delayed assertion of the right to a speedy trial weighed against him, and defendant did not show actual impairment of his defense.

**4. Pleadings—summons—date of offense—sufficient**

Defendant had adequate notice of a charge of impaired driving even though defendant argued that the criminal summons was defective in that it did not state the exact hour and minute of the offense. The date of the offense was a sufficient allegation of time in the usual form.

Appeal by defendant from judgment entered 17 February 2010 by Judge Clifton W. Everett, Jr. in Pitt County Superior Court. Heard in the Court of Appeals 26 October 2011.

*Attorney General Roy Cooper by Assistant Attorney General, Jess D. Mekeel, for the State.*

*Reece & Reece, by Michael J. Reece for defendant-appellant.*

STEELMAN, Judge.

The State's dismissal and re-filing of the impaired driving charge did not violate the separation of powers. This same conduct did not violate defendant's rights to due process or a speedy trial. The criminal summons was not fatally defective.

## I.  Factual and Procedural Background

On 7 March 2006, defendant was charged with driving while impaired in Pitt County. The case was scheduled for hearing in District Court 11 times. Several continuances were based on the unavailability of the State witnesses. On 18 July 2007, the arresting officer was not present in court. When the District Court denied the State's motion for a continuance, the State voluntarily dismissed the charge. On 27 July 2007, the State filed a new driving while impaired charge arising out of the 7 March 2006 incident. Defendant filed a motion to dismiss, which was granted by District Court Judge Charles M. Vincent on 24 October 2007. On 26 October 2007, the State appealed this ruling to Superior Court. On 28 February 2008, Judge Thomas D. Haigwood remanded this matter to the District Court for entry of a written order containing findings of fact and conclusions of law.

On 4 April 2008, in compliance with Judge Haigwood's order, Judge Vincent entered a written order which again dismissed the charge against defendant. On 9 May 2008, Judge W. Russell Duke, Jr. entered an order in Superior Court, reversing Judge Vincent's order and remanding the case to the District Court for trial. Defendant's petition for writ of *certiorari* to review this order was denied by this Court on 1 August 2008. On 13 April 2009, defendant was convicted of driving while impaired in District Court. Defendant appealed to Superior Court. On 15 February 2010, Judge Clifton W. Everett denied defendant's motion to dismiss, which was filed 4 February 2010. Judge Everett ruled that defendant's right to a speedy trial was not violated because "this is a misdemeanor charge and carries a statute of limitations" which has now expired.

On 17 February 2010, a jury found defendant guilty of driving while impaired. Judge Everett found defendant to be a Level Two offender, and imposed a suspended sentence of twelve months, with 24 months of supervised probation, 30 days in jail, a fine of $500, and substance abuse treatment.

Defendant appeals.

## II.  Whether State's Dismissal Violated the Separation of Powers Provision of the North Carolina Constitution

[1] In his first argument, defendant contends that the State's dismissal of his original charge on 18 July 2007, following the District Court's denial of the State's motion for a continuance, violated the

separation of powers provision of the North Carolina Constitution. Defendant further contends that Judge Duke erred in not dismissing the charge filed on 27 July 2007. We disagree.

Defendant argues that the district attorney is an executive branch official who was obligated to proceed with the trial when the District Court denied the State's continuance motion on 18 July 2007. Defendant further contends that to allow the State to voluntarily dismiss the charge allowed the executive branch to subvert the courts' ultimate authority to manage its trial calendar.

We first note that defendant's assertion that the district attorney is an executive branch officer is highly questionable. The Supreme Court addressed this question in the seminal case of *Simeon v. Hardin*, 339 N.C. 358, 451 S.E.2d 858 (1994):

> First of all, the district attorney cannot be easily categorized as belonging to any one branch of government. We note that the office of the district attorney is created in Article IV of the Constitution, the Judicial article, rather than in Article III, the Executive article. Furthermore, in the past, this Court has characterized district attorneys as "independent constitutional officers." *State v. Camacho*, 329 N.C. 589, 593, 406 S.E.2d 868, 870 (1991). We have also recognized that solicitors, as district attorneys were formerly known, are officers of the court and, in varied factual situations and in relation to diverse legal problems, may be considered a judicial or quasi-judicial officer.

*Id.* at 375, 451 S.E.2d at 870. Thus, defendant's separation of powers argument must fail since the district attorney is a judicial or quasi-judicial officer.

Even assuming that the district attorney is an executive officer, no violation of the separation of powers exists in this case. Our Supreme Court held that N.C. Gen. Stat. § 15A-931, which allows the district attorney to dismiss charges, is facially constitutional. *Id.* at 375-77, 451 S.E.2d at 869-71. Separation of powers does not demand that the branches of government "must be kept wholly and entirely separate and distinct[.]" *State v. Furmage*, 250 N.C. 616, 626, 109 S.E.2d 563, 570 (1959) (quoting 2 Joseph Story, Commentaries on the Constitution of the United States § 524 (1833)).

The State complied with N.C. Gen. Stat. § 15A-931 when the State voluntarily dismissed the original charge after the District Court denied its motion for a continuance. After the State filed a new

STATE v. FRIEND

[219 N.C. App. 338 (2012)]

charge, the Superior Court reversed the dismissal of that charge and remanded the case for trial. The trial court retained ultimate control over its calendar. Neither the dismissal nor the filing of the new charge threatened to violate the separation of powers. Therefore, even assuming two branches of government are at work in the setting of the trial calendar, defendant's separation of powers claim fails.

This argument is without merit.

### III. Whether the State's Filing of a New Charge Against Defendant Violated Defendant's Rights to Due Process and a Speedy Trial

In his second and third arguments, defendant contends that the trial court erred in denying his motion to dismiss, since the charge violated his due process and speedy trial rights. We disagree.

### A. Due Process

[2] Defendant argues that "the conduct of the State in re-filing the charge that had previously been dismissed both shocks the conscience and interferes with the rights and liberties of the citizenry. A criminal defendant has no power to control his prosecution." Defendant further argues that the imbalance of power between defendant and the State can be remedied only "by the inherent authority of the trial court[.]"

The North Carolina Constitution provides that "[n]o person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land." N.C. Const. art. I, § 19. The Law of the Land Clause was "copied in substance from Magna Charta by the framers of the [North Carolina] Constitution of 1776" and is synonymous with "due process of law, a phrase appearing in the Federal Constitution and the organic law of many states." *State v. Ballance*, 229 N.C. 764, 768-69, 51 S.E.2d 731, 734 (1949) (internal quotation marks omitted). *See also Rhyne v. K-Mart Corp.*, 358 N.C. 160, 180, 594 S.E.2d 1, 15 (2004).

"Substantive due process protection prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *State v. Thompson*, 349 N.C. 483, 491, 508 S.E.2d 277, 282 (1998) (citations and internal quotation marks omitted). The right to a speedy trial is guaranteed by the North Carolina Constitution. "[E]very person for an injury done him in his lands, goods, person, or reputation shall

have remedy by due course of law; and right and justice shall be administered without favor, denial, or delay." N.C. Const. art. I, § 18. The right to a speedy trial is also guaranteed by the 6th and 14th Amendments to the United States Constitution.

In the instant case, the State filed the new charge on 27 July 2007, after voluntarily dismissing the original charge pursuant to N.C. Gen. Stat. § 15A-931. The North Carolina Supreme Court held that N.C. Gen. Stat § 15A-931 did not violate due process. *Simeon*, 339 N.C. at 376-77, 451 S.E.2d at 870-71. Moreover, subsection (b) of N.C. Gen. Stat. § 15A-931 provides that dismissal of a charge does not toll the statute of limitations. N.C. Gen. Stat. § 15A-931(b) (2011). The statute of limitations for misdemeanors is two years from the commission of the offense. N.C. Gen. Stat. § 15-1 (2011). In the instant case, the statute of limitations would have expired on 7 March 2008.

Defendant fails to demonstrate how the new charge shocked the conscience or interfered with defendant's fundamental rights. Defendant does not argue that the State's action was taken in bad faith, nor does he indicate how he was prejudiced by the new charge. This argument is without merit.

### B. Speedy Trial

[3] Defendant contends that the "length of delay in defendant's case ran from 7 March 2007, the offense date," until his conviction in Superior Court on 17 February 2010. Defendant was convicted in District Court and appealed to Superior Court on 13 April 2009. On 4 February 2010, defendant asserted his right to a speedy trial.

In determining whether a defendant's right to a speedy trial has been infringed, our Courts consider the four factors enumerated in *Barker v. Wingo*, 407 U.S. 514, 530-32, 33 L. Ed. 2d 101, 116-18 (1972): (1) the length of the delay, (2) the reason for the delay, (3) defendant's assertion of his right to a speedy trial, and (4) prejudice to defendant. *State v. Washington*, 192 N.C. App. 277, 282, 665 S.E.2d 799, 803 (2008).

We must first determine the relevant period of delay. "A defendant's right to a speedy trial attaches upon being formally accused of criminal activity, by arrest or indictment." *State v. Hammonds*, 141 N.C. App. 152, 159, 541 S.E.2d 166, 172 (2000). The period relevant to speedy trial analysis ends upon trial. *See id.* at 160, 541 S.E.2d at 173. If the length of delay approaches one year, we examine the remaining three factors in *Barker*. *See State v. Webster*, 337 N.C. 674, 678-79, 447 S.E.2d 349, 351 (1994).

In the instant case, the date of the offense and the initial charge was 7 March 2006. Defendant was tried upon the re-filed charge in District Court on 13 April 2009. However, defendant never filed a motion for a speedy trial in District Court. His only speedy trial request was filed in Superior Court on 4 February 2010. Under these circumstances, where defendant already had a trial in District Court, the time for computing the delay runs from his appeal from District Court to Superior Court (13 April 2009) until his trial in Superior Court (15 February 2010). The period of delay was thus less than one year, and the remainder of the *Barker* analysis is inapplicable. We hold defendant's claim of denial of the right to a speedy trial to be without merit.

Even assuming *arguendo* that the delay exceeded one year, defendant's speedy trial claim is without merit. Under the second *Barker* factor, the reason for the delay, defendant argues that the failure of State witnesses to appear in court and the State's filing of a new charge were responsible for the delay. Defendant bears the burden of "presenting *prima facie* evidence that the delay was caused by the neglect or willfulness" of the State. *Washington*, 192 N.C. App. at 283, 665 S.E.2d at 804.

In reviewing the reasons for delay, it appears that of the 11 continuances of the original charge, six were for defendant, three were for the State, and two were by consent. After the charges were re-filed on 27 July 2007, the case bounced back and forth between District Court and Superior Court as Judge Vincent's ruling dismissing the case was appealed. On 13 January 2009, the District Court Judge recused himself, and the case was finally tried in District Court on 13 April 2009. Once in Superior Court, defendant's case was tried in less than one year.

We hold that the reasons for delay were attributable as much to defendant as to the State. In addition, the delay due to the State's appeal of Judge Vincent's order and the recusal of a District Court judge are neutral factors, weighing neither in favor nor against defendant's speedy trial motion. *See Hammonds*, 141 N.C. App. at 161, 541 S.E.2d at 174. These delays were not caused by the negligence or willfulness of the State. We hold that this factor cannot be weighed in favor of defendant's claim.

As to the third *Barker* factor, the record is unequivocal that defendant did not assert his right to a speedy trial until 4 February 2010. "Defendant's failure to assert his right to a speedy trial, or his

failure to assert his right sooner in the process, does not foreclose his speedy trial claim, but does weigh against his contention[.]" *State v. Grooms*, 353 N.C. 50, 63, 540 S.E.2d 713, 722 (2000). In *Grooms*, the defendant's assertion came nearly three years after indictment, and the Court held that the delay in his demand weighed against his claim. *Id.* In this portion of our analysis, we presume that the delay is computed from the filing of the initial charge, 7 March 2006. Thus, defendant's demand for a speedy trial came almost four years later, on 4 February 2010, and almost a year after his conviction in District Court. This delay in the assertion of his right to a speedy trial weighs against defendant's claim.

Finally, as to the fourth *Barker* factor, defendant argues that he suffered prejudice in the impairment of his defense. "The right to a speedy trial is designed: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Webster*, 337 N.C. at 680-81, 447 S.E.2d at 352. In the instant case, defendant fails to articulate any specific evidence or witness of which he has been deprived because of the delay.

Defendant further argues he suffered "anxiety and concern" during the delay. He attributes this anxiety to the fact that the prosecutor was "free to re-file at any time within the two year statute of limitations for misdemeanors[.]" The State filed a new charge 9 days after the original charge was dismissed, well within the two year statute of limitations for misdemeanors. *See* N.C. Gen. Stat. § 15-1 (2011). In *Webster*, the Court held that anxiety does not "loom as large as actual impairment of the defendant's ability to defend against the criminal charges themselves." *Webster*, 337 N.C. at 681, 447 S.E.2d at 352. Defendant did not assert his right to a speedy trial until almost two years after the statute of limitations had expired. As defendant's anxiety was limited by the statute of limitations and defendant failed to show actual impairment of his defense, the fourth factor weighs against defendant's claim.

The four *Barker* factors must be balanced. "No single factor is regarded as either a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial." *State v. McBride*, 187 N.C. App. 496, 498, 653 S.E.2d 218, 220 (2007). *See also Barker*, 407 U.S. at 529-30, 33 L. Ed. 2d at 116-17. Although the presumed length of the delay required further analysis under *Barker*, the reason for delay does not weigh in defendant's favor. Defendant's tardy assertion

of his right and lack of impairment to his defense weigh against his claim. We hold that even if the period of delay is computed from the date of the original charge, defendant's right to a speedy trial was not violated.

This argument is without merit.

### IV. Whether the Criminal Summons was Fatally Defective

**[4]** In his final argument, defendant contends that the criminal summons, issued on 27 July 2007, was defective in that it failed to state the time of offense in terms of the exact hour and minute. We disagree.

"An indictment or criminal charge is constitutionally sufficient if it apprises the defendant of the charge against him with enough certainty to enable him to prepare his defense and to protect him from subsequent prosecution for the same offense." *State v. Coker*, 312 N.C. 432, 434, 323 S.E.2d 343, 346 (1984).

"The legislature has, within constitutionally mandated parameters, the power to prescribe the manner in which a criminal charge can be stated in a pleading to relieve the State of the common law requirement that every element of the offense be charged." *Id.* N.C. Gen. Stat. § 20-138.1(c) states that a pleading is "sufficient if it states *the time and place* of the alleged offense *in the usual form*[.]" N.C. Gen. Stat. § 20-138.1(c) (2011) (emphasis added).[1] Defendant fails to cite any authority that "in the usual form" demands that the hour and minute of the offense be alleged in the charging instrument.

In *Coker*, the Court refused to quash an indictment that charged the defendant with "operating" a vehicle, instead of "driving," as prescribed in the pleading subsection of N.C. Gen. Stat. § 20-138.1. "In any event 'operate' as used in defendant's citation is not so great a refinement on the statutory short-form pleading as to render the charge unintelligible or to prevent the court from proceeding to judgment." *Coker*, 312 N.C. at 436, 323 S.E.2d at 347. The Court also rejected an argument that the indictment was "constitutionally infirm" because it lacked a statement of the theory of impairment. *Id.* at 436-41, 323 S.E.2d at 347-50. The Court pointed out that a defendant who feels he may be surprised may request a bill of particulars. *Id.* at 437, 323 S.E.2d at 348.

---

1. We note that although parts of N.C. Gen. Stat. § 20-138.1 were amended in 2006, subsection (c) was unchanged.

**STATE v. FRIEND**

[219 N.C. App. 338 (2012)]

In the instant case, the summons identified the charge as "operate a motor vehicle on a street or highway while subject to an impairing substance" and the date of the alleged offense as 7 March 2006. We hold that the date of the offense is a sufficient allegation of time in the usual form.

Defendant does not show prejudice resulting from the lack of the hour and minute of the offense on the summons. Defendant does not argue that he was surprised, or that he sought to rely on an alibi defense. Defendant does not assert that the summons exposed him to a subsequent prosecution for the same offense. When the State filed a charge on 27 July 2007, the summons stated the same offense, same offense date, same complainant, same location, same defendant, and same driver's license number as the previous citation. The record does not indicate that defendant faced another charge of driving while impaired on 7 March 2006. Defendant did not request a bill of particulars. *See State v. Eason*, 242 N.C. 59, 62, 86 S.E.2d 774, 777 (1955).

This argument is without merit.

## V. Conclusion

Under the holding of our Supreme Court in *Simeon*, there was no violation of separation of powers. Defendant failed to demonstrate that the dismissal of the driving while impaired charge and subsequent re-filing violated his due process rights. The length of the delay did not trigger consideration of the remaining *Barker* factors. Defendant's right to a speedy trial was not violated. Defendant had adequate notice of the charge, and has failed to show prejudice; therefore, the criminal summons was not fatally defective.

NO ERROR.

Judges GEER and BEASLEY concur.